IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

DEC 2 0 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

JOSEPH MCMAHON,

      **Plaintiff,**

     **v.**                             **CIVIL ACTION NO. 2:12cv332**

BALLARD BROTHERS FISH COMPANY, INC., et al.,

      **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

    This matter comes before the Court upon Defendants' G.M. Evans ("Evans") and Roger Pike, Jr. ("Pike") (collectively "Defendants") Motion to Dismiss. The Court has considered the memoranda that parties filed and this matter is now ripe for decision. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

### I. FACTS AND PROCEDURAL HISTORY

    Joseph McMahon ("Plaintiff") is a disabled veteran of the United States Military who suffers from anxiety disorder and post-traumatic stress disorder ("PTSD"). Compl. ¶9. Plaintiff uses an adult Shar Pei named Cogi ("Cogi") to help treat and cope with his disability. Compl. ¶10. On August 31, 2011, Plaintiff arrived at Cherrystone Family Camping Resort ("Campground"), a campground owned by Defendant Ballard Brothers Fish Company, Inc., ("Ballard Brothers"). Compl. ¶16. Upon arrival, Ballard Brothers' agent informed Plaintiff that he was not allowed to bring Cogi onto the Campground and requested documentation to support Cogi's status as a service dog. Compl. ¶16. In an effort to comply with the request, Plaintiff

1

provided his disability card and Cogi's shot records. The following day, Plaintiff, along with his family and Cogi, visited the Campground's swimming pool and were informed that Cogi was not allowed in the pool area. Compl. ¶18. Plaintiff once again explained to campground employees that, under the Americans with Disabilities Act ("ADA"), he was permitted to have a service dog to accommodate his disability. Compl. ¶18. After his unsuccessful attempt to resolve the issue with the Campground's main office staff, Plaintiff asked to speak with the general manager. Compl. ¶20. Plaintiff was instructed to return to his campsite and wait for the general manager. *Id.* Ninety minutes later, Plaintiff returned to the main office and met the general manager, along with Northampton County Sheriff's Department Deputies Evans and Pike. Compl. ¶24. Plaintiff showed his veteran's card to Evans and Pike and explained that Cogi was a service dog trained to assist with his PTSD. Compl. ¶26. While attempting to explain his need for Cogi, Plaintiff became "visibly emotionally upset".

Seeing Plaintiff's state, Evans said, "If you don't shut the hell up, I'm going to arrest you for disorderly conduct and take your dog away from you." Compl. ¶30. After Plaintiff again tried to explain his need for his service animal, Evans told him, "If you don't shut the fuck up, I'm going to arrest you and have your dog taken to the pound." Compl. ¶32. Later, Pike told Plaintiff, "If you don't quit this bullshit, I'm going to arrest you and lock you up for being mentally incapacitated." Compl. ¶33. Eventually, the Campground manager agreed to allow Plaintiff to remain on-site, under the condition that he would not take Cogi anywhere that dogs were not allowed. Compl. ¶35. As Plaintiff was driving back to his campsite, the stress and trauma of the incident caused him to suffer an anxiety attack. Plaintiff alleges that he still suffers from emotional damage as a result of Evans and Pike's threats. Compl. ¶37.

2

On June 13, 2012, Plaintiff filed the instant Complaint against Defendants Ballard Brothers, Evans, and Pike. On September 10, 2012, Plaintiff accepted Defendant Ballard Brothers' Offer of Judgment, leaving Evans and Pike as the remaining Defendants. Defendants Evans and Pike filed their Answer and Motion to Dismiss for Failure to State a Claim on September 21, 2012. Plaintiff responded to their Motion on October 4, 2012. The Court has considered the memoranda that the parties have filed and the matter is now ripe for judicial determination.

## II. LEGAL STANDARDS

A motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a complaint. Federal Rule of Civil Procedure 8 only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a plaintiff must still provide the Court with more than a mere "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must be supported by factual allegations that raise a right to relief above the speculative level. *Id.* In fact, a claim is considered facially plausible when the plaintiff gives the Court more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Qualified immunity provides that government officials performing discretionary functions generally are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an affirmative defense, and must be plead by the

3

defendant. *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Rule 8(c) of the Federal Rules of Civil Procedure states that "a party shall set forth affirmatively . . . any matter constituting an avoidance or affirmative defense." FED. R. CIV. P. 8(c). The court will not impose upon the plaintiff the obligation of anticipating the qualified immunity defense, and "it is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Gomez*, 446 U.S. at 640. Here, Defendants have pled qualified immunity as an affirmative defense and have satisfied this requirement.

### III. DISCUSSION

As a result of this encounter, Plaintiff alleges a state law claim for intentional infliction of emotional distress and two violations of his rights under federal law: (1) violation of the ADA and (2) violation of 42 U.S.C. § 1983. Defendants have filed a Motion to Dismiss, contending that they are entitled to qualified immunity and that Plaintiff has failed to allege sufficient facts to support his claims. The Court begins its analysis with the qualified immunity claim because "it is important that immunity questions be resolved at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

Qualified immunity shields federal and state officials from money damages, unless a plaintiff pleads facts showing that: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The first prong of the qualified immunity analysis requires the Court to determine whether, construing the facts in the light most favorable to the nonmoving party, the government official's actions violated a constitutional right. *Hutchinson v. Lemmon*, 436 Fed. App'x 210, 214

(4th Cir. 2011). When considering the second prong of the analysis, the Court must ask whether the right was "clearly established," such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* An officer violates "clearly established" law where his conduct transgresses a bright line rule that has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State. *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998) (citations omitted). The right alleged to have been violated must not simply exist in a generalized form, but

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *accord Henry v. Purnell,* 652 F.3d 524, 534 (4th Cir. 2011). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818. In commenting on this part of the analysis, the Fourth Circuit stated:

> [T]he assessment whether a "reasonable person" in the official's position would have known that his conduct would violate "clearly established" rights must be made on the basis of information actually possessed at the time by the official, or then readily available to him, and in light of the exigencies of time and circumstance in which the official took the action challenged. The tolerance thus accorded by the objective test to "good faith" mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection "to all but the plainly incompetent or those who knowingly violate the law" in order to avoid undue inhibition of public officials in the discharge of their discretionary duties.

*Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring) (citations omitted); *see also Torchinsky v. Sowinski,* 942 F.2d 257, 261 (1991) ("The very idea of reasonableness

5

requires that courts accord interpretive latitude to official judgments. If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." (citation omitted)).

Courts have the discretion to decide which of the two prongs of the qualified-immunity analysis to address first. *Ashcroft v. al-Kidd*, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the Court chooses to first examine whether the right that Defendants allegedly violated was clearly established at the time of the incident. *See Pearson*, 555 U.S. at 236; *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) ("[C]ourts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all") (citation omitted).

Plaintiff claims that Defendants violated his rights under the ADA by threatening to arrest him and take away his service animal if he did not comply with their directives. Plaintiff relies on 42 U.S.C. §12203 to support his contention that Evans and Pike are liable for violating his rights under the ADA. Section 12203 states, in relevant part:

> (a) **Retaliation**. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

> (b) **Interference, coercion, or intimidation**. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. §12203.

6

The "clearly established" standard is not satisfied here. The Fourth Circuit Court of Appeals ("Fourth Circuit") has held that §12203 cannot serve as the basis for individual liability in this context. *Baird v. Rose*, 192 F.3d 462, 472 ("[T]he ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."). Plaintiff argues that the plain language of the statute would seem to suggest that such a remedy is available, but the Fourth Circuit has explicitly rejected this argument. In *Baird*, the Fourth Circuit held that Congress chose to limit the remedies available to those who have suffered retaliation for conduct protected by the ADA to those remedies available under Title VII. *Id* at 471-472. Title VII does not authorize a remedy against individuals who are non-employers. *Id.*

At the time of the incident, it was not "clearly established" that such conduct would violate Plaintiff's constitutional rights. On the contrary, precedent indicates that the opposite is true. Courts, including the Fourth Circuit, have limited the ADA's application in instances of police investigation and arrest. *See Waller v. City of Danville, Virginia*, 556 F.3d 171 (4th Cir. 2007) ("Accommodations that might be expected when time is of no matter become unreasonable to expect when time is of the essence."); *see also Hainze v. Richards,* 207 F.3d 795, 801 (5th Cir. 2000) ("Title II does not apply to an officer's on-the-street responses to reported disturbances ... prior to officer's securing scene and ensuring that there is no threat to human life."); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007) (noting that "the exigent circumstances ...and the already onerous tasks of police on the scene" can limit the timing and availability of a reasonable accommodation). Furthermore, it is not entirely clear that the Defendants' conduct actually amounted to threats or retaliation. The use of coarse language in furtherance of a police investigation does not by itself not rise to the level of a constitutional violation. Ultimately,

Plaintiff's injury is *de minimis*, particularly since neither officer deprived Plaintiff of his service animal and no arrest occurred. *See Bircoll* 480 F.3d. at 1086 (granting dismissal for failure to state an ADA claim where the police department's failure to provide an interpreter did not result in a substantial disadvantage because Plaintiff could still effectively communicate). As such, the Court FINDS that Deputy Evans and Deputy Pike have asserted a valid quality immunity defense. Accordingly, Plaintiff's ADA claim is DISMISSED.

## B.  § 1983 Claim

Plaintiff argues that Evans and Pike acted under color of state law when they deprived him of his rights, in violation of the equal protection clause of the Fourteenth Amendment and the due process clauses of the Fifth and Fourteenth Amendments. The only basis Plaintiff provides for these contentions is his "right under the [ADA] to enjoy access to facilities with a service dog."

In order to prevail on his equal protection claim, Plaintiff must demonstrate that Deputies Evans and Pike, acting under color of state law, discriminated against him and that the discrimination was intentional." *C&H Co. v. Richardson,* 78 F. App'x 894, 902 (4th Cir. 2003). If a plaintiff makes the showing that he was intentionally discriminated against, then the Court must "determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001).

In order to make out either a substantive or procedural due process claim, a plaintiff is required to allege facts sufficient to support a finding that he was deprived of life, liberty, or property, by governmental action. *Equity in Athletics, Inc., v. Dep't of Educ.,* 639 F.3d 91, 109 (4th Cir. 2011). Generally, a due process claim requires a two-part analysis: whether the plaintiff

was deprived of a protected interest, and, if so, what process was due. *Brown v. Rectors & Visitors of Univ. of Va.,* 361 F. App'x 531, 532 (4th Cir. 2010) (citations omitted)).

At minimum, all of Plaintiff's §1983 claims hinge on a ruling that his ADA rights were violated. *Rosen v. Montgomery Cnty. Maryland,* 121 F.3d 154, 156 (4th Cir. 1997). As the Court noted *supra,* Defendants' conduct does not rise to the level of a cognizable violation of the ADA. Plaintiff's service animal was never taken away and he was never arrested. Nor did the Defendants ever remove Plaintiff from the Campgrounds. Defendants used coarse language and informed Plaintiff of the consequences of his failure to cooperate with their attempt to sort out a disturbance. This conduct hardly rises to the level of a cognizable ADA violation. Accordingly, Plaintiff's §1983 claims are DISMISSED. Because the Court has dismissed Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over the remaining state law claim. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726; *28 U.S.C. § 1367.* Accordingly, Plaintiff's state law claim is DISMISSED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED.** The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 20 , 2012

Raymond A. Jackson
**United States District Judge**

9